UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ALABAMA
SOUTHERN DIVISION

FILED

00 APR 20 PH 2: 58

U.S. DISTRICT COURT
N.D. OF ALABAMA

| | | | |
|---|---|---|---|
| LEO ROGERS, SR.; RICHARD MOSLEY; ELIJAH JONES; HAROLD CHILDRESS, | ) ) ) ) | | |
| Plaintiffs, | ) ) | | |
| vs. | ) ) | CV 99-BU-1648-S | **ENTERED** |
| INTERSTATE BRANDS CORPORATION; RETAIL, WHOLESALE & DEPARTMENT STORES UNION, LOCAL 441; HENRY JENKINS, | ) ) ) ) ) | | APR 2 0 2000 |
| Defendants. | ) ) | | |

MEMORANDUM OPINION

This case is presently pending before the Court on Motion for Summary Judgment filed by Defendant Interstate Brands Corporation (Doc. 21) and Motion for Summary Judgment filed by Defendants Retail, Wholesale, Department Store Union, the United Bakery and Confectionery Workers Union Local 441 and Henry Jenkins (Doc. 24). Plaintiffs, in opposition to Defendants' Motions have filed a Motion for Default Judgment, or in the alternative, to Strike Affidavit of James Sisson. As set forth hereinafter, the Court finds that Plaintiffs' Motion for Default Judgment (Doc. 27) is due to denied; Plaintiffs' Motion to Strike (Doc. 27) is due to be granted in part and denied in part. Also, the Court finds that Defendants' Motions for Summary Judgment are due to granted.

## I.   STATEMENT OF FACTS

This case concerns a change in the collective bargaining agreement regarding how

employees of Interstate Brands Corporation [hereinafter "the Company"] select or choose

their vacation time.  Plaintiffs have sued the Company and Retail, Wholesale & Department

Store Union, the United Bakery and Confectionery Workers Union Local 441 [hereinafter

"the Union"] for a declaratory judgment, alleging a hybrid § 301/fair representation claim[1]

against the Company and the Union, and alleging the Union breached its duty of fair

representation during the ratification of the 1998 collective bargaining agreement

[hereinafter "the 1998 Agreement"proceedings].  Plaintiffs also allege that Henry Jenkins,

a union representative,  is liable based on his actions on behalf of the Union during the

---

[1]A hybrid § 301/fair representation claim has been described by the Supreme
Court as follows:

> Such a suit, as a formal matter, comprises two causes of action. The suit
> against the employer rests in § 301 [29 U.S.C. § 185(a)], since the
> employee is alleging a breach of the collective-bargaining agreement.
> The suit against the union is one for breach of the union's duty of fair
> representation, which is implied under the scheme of the National Labor
> Relations Act.  Yet the two claims are inextricably interdependent.  To
> prevail against either the company or the Union, ... [employee-plaintiffs]
> must not only show that their discharge was contrary to the contract but
> must also carry the burden of demonstrating breach of duty by the Union.
> . . .  The employee may, if he chooses, sue one defendant and not the
> other; but the case he must prove is the same whether he sues one, the
> other, or both. The suit is thus not a straightforward breach-of-contract suit
> under § 301, . . .  but a hybrid § 301/fair representation claim, amounting
> to a direct challenge to the private settlement of disputes under the
> collective-bargaining agreement.

*DelCostello v. International Brotherhood of Teamsters*, 462 U.S. 151, 164-65, 103 S.
Ct. 2281, 2290-91, 76 L. Ed. 2d 476 (1983) (citations and internal quotations omitted)

ratification proceedings and the processing of their grievance.

The Company employs Plaintiffs -- Harold Childress, Elijah Jones, Richard Mosley and Leo Rogers -- at its Merita Bakery in Birmingham. The Union is the bargaining agent for certain employees, including Plaintiffs, at the Birmingham bakery. Plaintiffs are members of the Union.

On May 31, 1998, the Union and Company's collective bargaining agreement, which was entered into on May 29, 1995 [hereinafter the "1995 Agreement"], expired. At this time the Union and Company entered into negotiations on a new collective bargaining agreement. The 1998 Agreement was reached and, on June 13, 1998, this agreement was presented to the Union members for a ratification vote.

Prior to the ratification vote on the 1998 Agreement, Union representative, Radford Tidwell, explained the terms of the agreement, which the Union and the Company had negotiated. Plaintiffs, except Jones who was not present at the meeting, agree that Tidwell told them that they would have to "lay down" their seniority rights with regard to vacation selection. Plaintiff Mosley testified that some members voted to compromise the seniority rights with regard to vacation selection in exchange for increased wages. Mosley Depo., p. 61.

The 1995 Agreement provided that vacation was selected according to plant-wide seniority and the production, sanitation, and shipping departments selected together.[2] This

---

[2]The 1995 agreement states:

    During the period from October 1 to December 31 each year, a seniority list of employees shall be posted during which time employees

Page 3 of 22

resulted in persons with higher seniority having more vacation slots from which to choose. The 1998 Agreement separated the production, sanitation, and shipping departments for vacation selection,[3] decreasing the total number of slots available to an employee of those departments.   The change did not decrease the amount of vacation time available or change the amount of seniority; it only changed the manner in which vacation was selected.[4]

Plaintiffs Childress and Rogers objected to the change in the vacation selection

_____

will select their vacation period for the current year in accordance with the vacation schedule.  Such selections to be made according to seniority.  **Vacation selection for production, sanitation and shipping shall be chosen together** so long as only one (1) mixer, one (1) bread oven operator and one (1) roll oven operator, one (1) wrapper operator and a maximum of two (2) plant shippers and two (2) sanitors shall be allowed off at a time.

Company Exh. D, Exh. 1, p.7 (emphasis added; original emphasis deleted).

[3]The 1998 Agreement states:

During the period from October 1 to December 31 each year, a seniority list of employees shall be posted during which time employees will select their vacation period for the current year in accordance with the vacation schedule.  Such selections to be made according to seniority.  **Vacation selection for production, sanitation and shipping shall be considered separate departments for taking vacations.**  Only one (1) mixer, one (1) bread oven operator and one (1) roll oven operator, one (1) wrapper operator and a maximum of two (2) plant shippers and two (2) sanitors shall be allowed off at a time.

Company Exh. D, Exh. 2, p. 7 (emphasis added, original emphasis deleted.)


[4]The parties have not demonstrated that their vacation selection was adversely affected by the change in vacation selection provision of the 1998 Agreement.

provision prior to the vote to ratify the 1998 Agreement.   Nevertheless, the 1998

Agreement was ratified by the Union members by a vote of 64 to 42.

Plaintiffs Childress and Rogers filed a grievance regarding the change in the

vacation selection process.   The Grievance Report, signed by Childress and Rogers,

states:

> STATEMENT OF GRIEVANCE
>
> To have the right to select our vacation by seniority not by department
> seniority. We do not have department seniority. We do not have department
> vacation.  Bob Ray made a decision about this grievance 15 years ago for
> the Company.  It was considered a violation of the agreement.
>
> ARTICLES & SECTIONS OF CONTRACT ALLEGED VIOLATED
>
> VII, XXII
>
> 7.5  The Company nor the Union give seniority.  The word ["]considered["]
> [does] not give [any]one the right to change our vacation schedule.  [There]
> is no negotiation for seniority.
>
> SETTLEMENT DESIRED
>
> To have this considered.  During the period from Oct. 1 to Dec. 31 each year
> a seniority list  of employee[s] shall be posed during which time employees
> will select their vacation period for the current year in accordance with the
> vacation schedule.  Such selection to be made according to seniority.

Company Exh. C, Exh. 3.

The grievance was decided in favor of the Company and the 1998 Agreement,

sometime in November 1998.   The grievance was denied on the grounds that it was

contrary to the language of the 1998 Agreement and the grievance did not state a violation

of the 1998 Agreement.   Neither the Union nor the Plaintiffs pursued the grievance to

arbitration. Plaintiffs filed this action against the Company, the Union, and Jenkins on May

21, 1999, in Circuit Court of Jefferson County, Alabama. Thereafter Defendants removed the case to this Court.

Plaintiffs' Complaint alleges that the Union and the Company entered into an "improper agreement which fails to comply with the pattern and practice of considering seniority for vacation on a company wide basis." Complaint, ¶ 10. They contend that the agreement changing the manner in which vacation is selected is "an improper interference with the seniority policy for vacation scheduling [that] sets a dangerous precedent for removing seniority with regard to promotions and other terns and conditions of employment." Id. ¶ 11.

Further, Plaintiffs allege that the Union "failed to represent them in good faith when [it] entered into the improper agreement with [the Company]." Complaint, ¶ 12. Plaintiffs allege that the Union's representative, Defendant Henry Jenkins, negotiated the change in vacation selection "with full knowledge that seniority is non-negotiable." Id. ¶ 14. They contend, "Defendant Union Representative, Henry Jenkins, presented the issues of seniority and vacation as a voluntary option. Nonetheless, the language in the contract for June 1, 1988 to June 2, 2001 is unequivocal[,] stating that vacation will be granted according to departmental seniority, thereby divesting the Plaintiffs of their rights to use seniority at their discretion." Id. ¶ 15.[5]

---

[5]Plaintiffs contend in opposition to Defendants' Motions for Summary Judgment that they also object to § 8.1 of the 1998 Agreement, which concerns "bumping" rights. They do not raise this issue in their Complaint; therefore, it is not before the Court.

## II.    SUMMARY JUDGMENT STANDARD

Summary judgment provides the parties an opportunity to test the mettle of a case before it ever reaches trial. On a motion for summary judgment, the court assesses all of the proof the parties bring to bear in order to ascertain whether there is a genuine need for a trial. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587, 106 S. Ct. 1348, 1356, 89 L. Ed. 2d 538 (1986)(quoting Advisory Committee Note to 1963 Amendment to Fed. R. Civ. P. 56(e)). Summary judgment is appropriate only if the court concludes that no genuine issue of material fact exists and that the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c); *see Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249, 106 S. Ct. 2505, 2511, 91 L. Ed. 2d 202 (1986); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322, 106 S. Ct. 2548, 2552, 91 L. Ed. 2d 265 (1986).

A party seeking summary judgment has the initial responsibility of informing this court of the grounds for its motion and specifically identifying those portions of the pleadings, depositions, answers to interrogatories, admissions on file, and any affidavits that it believes demonstrate the absence of a genuine issue of material fact. *Celotex*, 477 U.S. at 323, 106 S. Ct. at 2553; *Clark v. Coats & Clark, Inc.*, 929 F.2d 604, 608 (11th Cir. 1991). The moving party's burden is not meager; it must illuminate for the court the reasons why the nonmoving party cannot or does not raise a genuine issue of material fact sufficient to support a trial. *Id*. The moving party's burden was set forth in *Clark* as follows:

> The moving party bears the initial burden to show the district court, **by reference to materials on file**, that there are no genuine issues of material fact that should be decided at trial. **Only** when that burden has been met does the burden shift to the non-moving party to demonstrate that there is indeed a material issue of fact that precludes summary judgment. *Celotex*

did not change the general rule. *Celotex* simply holds that under certain circumstances the movant may meet its Rule 56 burden without negating an element of the non-moving party's claim and that under such circumstances it is sufficient to point to materials on file that demonstrate that the party bearing the burden of proof at trial will not be able to meet that burden. ***Even after Celotex it is never enough to simply state that the non-moving party cannot meet its burden at trial***.

*Id*. (citing *Celotex*, 477 U.S. at 323-25, 106 S. Ct. 2553-54)(emphasis added)[6]

Once the moving party has satisfied this initial burden, however, the nonmoving party "must make a sufficient showing to establish the existence of each essential element to that party's case, and on which that party will bear the burden of proof at trial." *Howard v. BP Oil Company*, 32 F.3d 520, 523 (11ᵗʰ Cir. 1994). "Rule 56(e) . . . requires the nonmoving party to go beyond the pleadings and by her own affidavits, or by the 'depositions, answers to interrogatories, and admissions on file,' designate 'specific facts showing that there is a genuine issue for trial." *Celotex*, 477 U.S. at 324, 106 S. Ct. at 2553 (quoting Fed. R. Civ. P. 56(e)); *see Cottle v. Storer Communication, Inc.*, 849 F.2d 570, 575 (11ᵗʰ Cir. 1988). However, "Rule 56 . . . does not impose upon the district court a duty to survey the entire record in search of evidence to support a non-movant's opposition." *Jones v. Sheehan, Young & Culp, P.C.*, 82 F.3d 1334, 1338 (5ᵗʰ Cir. 1996); *see also Resolution Trust Corp. v. Dunmar Corp.*, 43 F.3d 587, 599 (11ᵗʰ Cir.) ("There is

---

[6]The Eleventh Circuit recognized that *Celotex* created "an exception to the *Adickes* rule for [an] uncommon situation," i.e., "when neither party could prove either the affirmative or the negative of an essential element of the claim." *Clark*, 929 F.2d at 607, 608. In this "uncommon situation," the *Celotex* exception allows a moving party to carry its burden by showing or "pointing out," by reference to record, that the non-moving party cannot prove its claim. *Id*. at 607. Obviously, this case does not fall into the "uncommon situation" addressed in *Celotex*. *See* Def. Brief, p. 14.

no burden upon the district court to distill every potential argument that could be made based upon the materials before it on summary judgment."), *cert. denied sub nom.*, 516 U.S. 817, 116 S. Ct. 74, 133 L. Ed. 2d 33 (1995).

In resolving whether a given factual dispute requires submission to a jury, the court must inspect the presented evidence through the looking glass of each party's substantive evidentiary burden. *Anderson*, 477 U.S. at 254-55, 106 S. Ct. at 513. The court, however, must avoid weighing conflicting evidence for probity or making credibility determinations. *Welch v. Celotex Corp.*, 951 F.2d 1235, 1237 (11th Cir. 1992). "It is not part of the court's function, when deciding a motion for summary judgment, to decide issues of material fact, but rather decide whether such issues exist to be tried. The Court must avoid weighing conflicting evidence or making credibility determinations." *Hairston v. Gainesville Sun Publishing Co.*, 9 F.3d 913, 919 (11th Cir. 1993). At the same time, "[t]he nonmoving party must provide more than a mere scintilla of evidence to survive a motion for judgment as a matter of law; 'there must be a substantial conflict in evidence to support a jury question.'" *Tidwell v. Carter Products*, 135 F.3d 1422, 1425 (11th Cir. 1998) (citing *Carter v. City of Miami*, 870 F.2d 578, 581 (11th Cir.1989)).

## III.   DISCUSSION

### A.   PLAINTIFFS' MOTION FOR DEFAULT OR, IN THE ALTERNATIVE, MOTION TO STRIKE

Plaintiffs have filed a Motion for Default Judgment or, in the alternative, Motion to Strike the Affidavit of James Sisson (Doc. 27) on the ground that evidence attached to the affidavit was not disclosed during discovery. The Court notes that, although Plaintiffs

request a default judgment in the opening paragraph of their motion, the concluding

paragraph states that "the Plaintiffs request that this Honorable Court will strike the affidavit

of James Sisson and any documents attached to or referred therein. Additionally, the

Plaintiffs' request that the Court will grant an award of attorney's fees incurred drafting this

motion." (Doc. 27) Plaintiffs have not presented sufficient evidence to indicate that a

default judgment is the appropriate sanction for Defendants' conduct. Moreover, Plaintiffs

apparently abandon this request for relief somewhere between the beginning of their

motion and its end. Therefore, Plaintiff's Motion for Default Judgment (Doc. 27) is due to

be denied.

However, Plaintiffs' Motion to Strike is due to be granted in part. The law in this

Circuit is well established that "on a motion for summary judgment a court will disregard

only the inadmissible portions of a challenged affidavit offered in support of or opposition

to the motion and will consider the admissible portions in determining whether to grant or

deny the motion." *Lee v. National Life Assurance Co.*, 632 F.2d 524, 529 (5th Cir.

1980)(citations omitted).

The only portion of Sisson's affidavit based on the non-disclosed evidence is

paragraph 9, which states:

> Attached hereto as [Exhibit] D is a true and correct copy of the
> [Union's] minutes of a November 10, 1998 grievance meeting with Interstate
> Brands. Such minutes [as] these are prepared by the [Union] Representative
> who presides over the grievance meeting, and are maintained by the Union
> with the files of the subject grievances.

Union Exh. A, ¶ 9. Exhibit D to Sisson's affidavit are hand-written notes, which are dated

November 10, 1998, and appear to discuss a meeting, which Sisson did not attend,

between Plaintiffs Childress and Rogers, and representatives of the Union and the Company regarding Plaintiffs' grievance. Union Exh. A, Exh. D. Nothing in Sisson's affidavit or in the notes of minutes indicates that Sisson has any basis for personal knowledge of the date of the grievance meeting except the minutes.

According to Plaintiffs' Motion to Strike, the minutes of the grievance meeting were not disclosed during discovery, either pursuant to Fed. R. Civ. P. 26(a)(1) or in response to Plaintiffs' Request for Production. The Union contends that the minutes were disclosed in its Initial Disclosures and that the document was included in its response to Plaintiffs' Request for Production. A copy of its Rule 26 Initial Disclosures is attached to its Reply Brief and the Union's Initial Disclosures disclose the minutes from the November 10, 1998 meeting. However, the Union's Initial Disclosures were not filed with the Court, as required by the Court's Scheduling Order. The Union contends that its Initial Disclosures and all documents it produced in response to Plaintiffs' Requests for Production were copied and served on the Company. However, the Company's response to Plaintiffs' Motion to Strike does not support the Union's assertion that the minutes were disclosed and/or produced to Plaintiffs.[7]

_____

[7]The Company argues:

Plaintiffs do not contend that [the Company] did anything wrong during the discovery process. While Plaintiffs contend that the Union did not timely produce the notes attached to Sisson's affidavit, the affidavit without the notes establishes that November 10, 1998, was the date of the grievance meeting. Plaintiffs do not cite to any contrary record evidence. [The Company] does not agree with Plaintiffs' unsupported assertions regarding Local 441's conduct. [The Company] further notes that Sisson attended several of the depositions in this case and could not

Page 11 of 22

The minutes establish conclusively that Defendants are entitled to summary judgment on the grounds that Plaintiffs did not timely file this action. However, because the Court finds that Defendants are entitled to summary judgment on grounds other than the statute of limitations defense and because the Court suspects that such minutes were not disclosed and/or produced, the Court will not consider that portion of Sisson's affidavit regarding the meeting notes. The Court considers Plaintiffs' allegation that the minutes of the grievance meeting were neither disclosed nor produced to be serious. Yet, notably, the Company does not support the Union's position. This lack of any assertion by the Company that, in fact, it had received the minutes in the documents produced by the Union to Plaintiffs -- which the Union contends were copied and sent to the Company -- is significant. Because it appears likely that the minutes were not disclosed or produced, the minutes shall not be considered in support of Defendants' Motions. Exhibit D and ¶ 9 of Sisson's affidavit are due to be stricken and will not be considered by the Court in deciding Defendants' Motions for Summary Judgment.

While the Court's action may be fatal to Defendants' contention that Plaintiffs' claims are barred by the statute of limitations -- as, incredibly, there is no other evidence to establish the date of this meeting, the Court finds that Defendants' Motions for Summary Judgment are due to be granted on the ground that Plaintiffs cannot establish that the

---

be considered a secret to Plaintiffs. Regardless, Plaintiffs do not allege any wrongdoing by [the Company] and, therefore, there is no basis for denying [the Company] summary judgment because the undisputed evidence from Sisson's affidavit proves Plaintiffs' claim was untimely.

Company's Reply Brief, p. 7.

Union breached its duty of fair representation in the ratification of the 1998 Agreement, and, consequently, Plaintiffs cannot establish their hybrid § 301 claims.

### B.    CLAIMS AGAINST DEFENDANT HENRY JENKINS

Defendants contend that Jenkins is immune from suit based on 29 U.S.C. § 185(b). Jenkins is President of RWDSU, Alabama MidSouth Council.   Plaintiffs contend that Jenkins is liable for his actions during the negotiations and ratification of the 1998 Agreement and the handling of their grievance.

Individual union representatives are immune from suit for breach of duty of fair representation; such claims can only be brought against the Union.  *Morris v. Local 819, International Brotherhood of Teamsters*, 169 F.3d 782, 784 (2d Cir. 1999)("29 U.S.C. § 185(b) and the caselaw provide a shield of immunity for individual union members in suits for breach of the duty of fair representation.")(citations omitted).   Therefore, Defendant Jenkins's Motion for Summary Judgment is due to be granted and all claims against Defendant Henry Jenkins are due to be dismissed.

### C.    RATIFICATION OF THE 1998 AGREEMENT

#### 1.    Seniority Rights Are Negotiable

Plaintiffs contend that seniority rights were non-negotiable.  However, this position is contrary to established caselaw.   Indeed, the Supreme Court has stated that the exclusive bargaining agent of the employees, the Union in this case, may negotiate seniority rights with the employer;  the Court held:

> The authority of every bargaining representative under the National Labor Relations Act, as amended, is stated in broad terms:

'Sec. 7. Employees shall have the right to self-organization, to form, join, or assist labor organizations, to bargain collectively through representatives of their own choosing, and to engage in other concerted activities for the purpose of collective bargaining or other mutual aid or protection. * * *

'Sec. 9. (a) Representatives designated or selected for the purposes of collective bargaining by the majority of the employees in a unit appropriate for such purposes, shall be the exclusive representatives of all the employees in such unit for the purposes of collective bargaining in respect to rates of pay, wages, hours of employment, or other conditions of employment:

29 U.S.C. §§ 157, 159(a).

In the absence of limiting factors, *the above purposes*, including "mutual aid or protection" and "other conditions of employment", *are broad enough to cover terms of seniority*. The National Labor Relations Act, as passed in 1935 and as amended in 1947, exemplifies the faith of Congress in free collective bargaining between employers and their employees when conducted by freely and fairly chosen representatives of appropriate units of employees.  [T]he authority of bargaining representatives, however, is not absolute . . . .  Their statutory obligation to represent all members of an appropriate unit requires them to make an honest effort to serve the interests of all of those members, without hostility to any.

*Ford Motor Co. v. Huffman*, 345 U.S. 330, 336-37, 73 S. Ct. 681, 685-686, 97 L. Ed. 1048

(1953)(emphasis added, citations omitted).  Other circuit courts have recognized that

seniority may be compromised in a collective bargaining agreement.  *See Rakestraw v.*

*United Airlines, Inc.*, 981 F.2d 1524, 1535 (7th Cir. 1992)("Once a seniority system is in

place, many employees come to think of their position in the pecking order as a form of

property.  Higher seniority means more desirable assignments and greater security of

employment. . . .  Yet seniority does not 'belong' to an employee . . . .  Seniority is a

creation of collective bargaining agreements . . . .  When these expire, employers are free

Page 14 of  22

to use other criteria, such as merit, to assign jobs and decide who will be let go in hard times. *Like wages and fringe benefits, seniority is a legitimate subject of discussion and compromise in collective bargaining*.")(emphasis added, citations omitted), *cert. denied sub nom Hammond v Air Line Pilots Ass'n, International*, 510 U.S. 861, 114 S. Ct. 175, 126 L. Ed. 2d 134 (1993 ); *see also  Hass v. Darigold Dairy Products Co.*, 751 F.2d 1096, 1099 (9th Cir. 1985)("It is quite well established in this Circuit that *seniority rights are creations of the collective bargaining agreement, and so may be revised or abrogated by later negotiated changes in this agreement*.  Employee seniority rights are not 'vested' property rights which lie beyond the reach of subsequent union-employer negotiations conducted in the course of their evolving bargaining relationship.")(emphasis added, citations omitted); *Deboles v. Trans World Airlines, Inc.*, 552 F.2d 1005, 1014 (3d Cir. 1977)("*[S]eniority differences and seniority adjustments among employee groups governed by a single contract are within the union's discretion and judgment, so long as the seniority disadvantage is not the result of arbitrary reasons unrelated to relevant differences*.  Thus, seniority differences disadvantageous to a segment of a collective bargaining unit had been upheld where the distinctions were found to fall within the range of reasonableness which governs the union fiduciary responsibility to its members.")(emphasis added, citations omitted), *cert. denied*, 434 U.S. 837, 98 S. Ct. 126, 54 L. Ed. 2d 98 (1977 ); *Schick v. NLRB*, 409 F.2d 395, 398 (7th Cir. 1969)("Seniority rights are not vested, but derive their scope and significance from union contracts, confined as they almost exclusively are to unionized industry. *Thus seniority is a valid subject matter for the collective bargaining process*.  . . .  Seniority rights may be based upon

such variables as the nature of the work or departmental membership.")(emphasis added, citations and quotations omitted).

Thus, the collective bargaining agreement at issue in this case is not invalid merely because it addressed seniority. Moreover, Plaintiffs' claim that the Employer "knowingly entered into an agreement it knew was illegal, because it knew that seniority was not negotiable,[8] is due to be dismissed.

### 2.    Ratification Process

Plaintiffs contend that the Union breached its duty of fair representation during the ratification of the 1998 Agreement. Specifically, Plaintiffs contend (1) that the agreement is void because the Union representative did not clearly explain whether members would "voluntarily" relinquish seniority rights with regard to vacation selection or whether such relinquishment of seniority rights was obligatory under the contract; and (2) that the contract was not effectively executed because of the ambiguous explanation of the contract terms and the members did not receive the proposed agreement in writing. Plaintiffs' Brief (Doc. 31, Exh. 1), pp. 9-12. In their brief in opposition to Defendants' Motions for Summary Judgment, Plaintiffs contend:

> The ratification of the 1998 [Agreement] was ineffective as a result of the ambiguity of its contents at the time the vote was taken. With respect to seniority and Article 7.5, it is unclear whether the members would voluntarily lay down their seniority or whether the contract language would obligate them to give up seniority for vacations. This ambiguity of a material fact made void the contract or at least negates its ambiguous contents.

---

[8]Plaintiffs' Brief (Doc. 31, Exh. 1), p. 10.

. . .

 Adequacy of negotiations is not raise[d] as an issue by the Plaintiffs. Likewise, the Plaintiffs do not ask the court to assess the fairness of the [1998 Agreement's] terms. In the present case, the Plaintffs' [sic] are asking the Court [to] ascertain the validity of the contract base[d] on ineffective execution.

*Id*. at 9.

 The Union owes its members a duty of fair representation during the ratification

process:

 [T]he exclusive agent's statutory authority to represent all members of a designated unit includes a statutory obligation to serve the interests of all members without hostility or discrimination toward any, to exercise discretion with complete good faith and honesty, and to avoid arbitrary conduct.

*Vaca v. Sipes*, 386 U.S. 171, 177, 87 S. Ct. 903, 910, 17 L. Ed. 2d 842 (1967). "A breach

of the statutory duty of fair representation occurs only when a union's conduct toward a

member of the collective bargaining unit is arbitrary, discriminatory, or in bad faith." *Id*. at

190, 87 S.Ct. at 916; *see also Air Line Pilots Ass'n International v. O'Neill*, 499 U.S. 65,

111 S.Ct. 1127, 1130, 113 L. Ed. 2d 51 (1991). The Supreme Court noted:

 The employee may disagree with many of the union decisions but is bound by them. The majority-rule concept is today unquestionably at the center of our federal labor policy. The complete satisfaction of all who are represented is hardly to be expected. A wide range of reasonableness must be allowed a statutory bargaining representative in serving the unit it represents, subject always to complete good faith and honesty of purpose in the exercise of its discretion.

*NLRB v. Allis-Chalmers Manufacturing Co.*, 388 U.S. 175, 180, 87 S. Ct. 2001, 2006-07,

18 L. Ed. 2d 1123 (1967)(footnote, citations, and internal quotations omitted).

 In addition to finding a breach of the Union's duty of fair representation, "the federal

courts have consistently required a direct nexus between the breach of this duty and

resultant damages to the individual or minority segment as an element of liability."

*Deboles*, 552 F.2d at 1018.   The *Deboles* Court held:

> [W]e hold that liability for a labor union's deceptive conduct in breach
> of the fiduciary duty of fair representation arises only if the breach directly
> causes damage to an individual or group to whom the duty is owed.   There
> is no liability . . . where the false statements by union officials concerning the
> union's efforts and bargaining position did not ***materially affect*** the result of
> the subsequent ratification vote.

*Id.* at 1020(emphasis added).

The Court doubts that the record would support a claim that the Union breached its

duty to fairly represent Plaintiffs based on the alleged ambiguous statements made by

Tidwell during the ratification meeting[9] and the failure to provide written copies of the

changes.[10]   However, this Court need not reach that issue because, even assuming that

the Union's actions during the ratification meeting constitute a breach of their duty of fair

---

[9]Rogers, Childress, and Mosley agree that Tidwell said that "as far as jobs [were]
concerned that seniority could be used, but you had to lay it down when it came to
vacation time."   Company Exh. 12, p. 24; *see also* Company Exh. 11, pp. 50-51
("[E]ach department will take their vacation separate[ly].   We will ask you to lay down
your seniority for vacation.").   Plaintiffs contend that this comment was ambiguous
because they believed that, after the vote to ratify the 1998 Agreement, they could
agree or refuse to "lay down" their seniority for purposes of vacation selection; in other
words, they contend that Tidwell said that the change would only be voluntary after
ratification.   This is an unreasonable interpretation.   No reasonable juror could find that
Tidwell's statements were deceptive regarding the effect of the 1998 Agreement on
vacation selection rights. *See* Company Exh. 13, pp. 18-19 (Plaintiff Mosley understood
Tidwell's statements to mean that the phrase "lay down your seniority" meant that the
vote was about whether or not to have departmental vacation selection or plant wide
vacation selection).

[10]The evidence indicates that Tidwell read the changes to the Union members at
the meeting, in addition to explaining the changes.

representation, such conduct cannot be said to have had an effect on the outcome of the ratification vote.

The 1998 Agreement was passed by a vote of 64 in favor of the agreement to 42 against the agreement.  Plaintiffs Childress and Mosley voted against the agreement. Plaintiff Jones was not at the meeting.  Therefore, a full and clear explanation of the changes to the vacation selection provision cannot be said to have materially affected or changed their votes.  Plaintiff Rogers was the only one of the Plaintiffs that voted for the agreement.  Even if the Court were to accept the proposition that Rogers would have changed his vote, Plaintiffs have presented no evidence that the agreement would not have passed anyway, given the considerable margin by which the 1998 Agreement was ratified.

Because Plaintiffs have not presented evidence that the allegedly ambiguous statement of Tidwell and the failure to provide written copies of the 1998 Agreement affected the ratification vote, the Union is entitled to summary judgment as to Plaintiff's claim of breach of duty of fair representation with regard to the ratification of the 1998 Agreement.

### 3.    Grievance Proceedings

Plaintiffs contend that the Company breached the 1995 Agreement, which they contend governed vacation selection because the 1998 Agreement was not properly ratified. Also, they contend that the Company "wrongfully denied" their grievance regarding the 1998 Agreement and that the Union breached its duty of fair representation by failing to pursue the grievance to arbitration.  In order to prevail on their hybrid § 301 claim,

Plaintiffs must prove (1) the Employer breached the 1998 Agreement, *and* (2) the Union breached its duty of fair representation. *DelCostello*, 462 U.S. at 164-65, 103 S. Ct. at 2290-91. Based on the Court's finding that Plaintiffs have failed to prove that the 1998 Agreement was not properly ratified, the Court finds Plaintiffs' hybrid § 301 claims are without merit and that summary judgment is due to be granted in favor of Defendants.

Plaintiffs Childress and Rogers filed a grievance, which complained about the vacation selection provision of the 1998 Agreement. The grievance stated in part, "We do not have department seniority. We do not have department vacation. Bob Ray made a decision about this grievance 15 years ago for the Company. . . . [There] is no negotiation for seniority." Clearly, Plaintiffs' grievance concerned the propriety of the vacation selection provision of the 1998 Agreement. As set forth above, seniority rights with regard to vacation selection may be negotiated by the Union and the Company in the collective bargaining agreement. Moreover, the Court finds that Plaintiffs have failed to establish a claim with regard to the ratification of the 1998 Agreement. The 1998 Agreement, for purposes of this case, is valid and enforceable. Because the 1998 Agreement was valid, the Company did not breach the 1995 Agreement, which by its terms had expired. Further, the Union was not required to pursue the grievance that was without merit.

Therefore, there can be no claim with regard to improper handling of their grievance, the substance of which this Court finds to be without merit. *See Vaca*, 386 U.S. at 192, 87 S. Ct. at 918 ("For these reasons, we conclude that a union does not breach its duty of fair representation, and thereby open up a suit by the employee for breach of contract, merely because it settled the grievance short of arbitration."); *Seborowski v. Pittsburgh Press Co.*,

188 F.3d 163, 168-69 (3d Cir. 1999)("The Union's refusal to arbitrate does not constitute, as a matter of law, an inability by its members to initiate arbitration under the collective bargaining agreement.  A union is not required to press every contractual dispute to arbitration, especially a dispute that the union has in good faith determined lacks merit.")(citations omitted); *Garcia v. Zenith Electronics Corp.*, 58 F.3d 1171, 1176 (7th Cir. 1995)(In a claim against a union for breach of its duty of fair representation with regard to a grievance proceeding, "[t]he plaintiff must also establish both that the union acted at least arbitrarily **and** that the plaintiff was actually harmed by the union's activities;"  therefore, the plaintiff must "establish that the outcome of the arbitration would probably have been different but for the union's activities." (citing *Black v. Ryder/P.I.E. Nationwide, Inc.*, 15 F.3d 573, 585 (6th Cir. 1994); *Ooley v. Schwitzer Div., Household Mfg., Inc.*, 961 F.2d 1293, 1302, 1304 (7th Cir.), *cert. denied*, 506 U.S. 872, 113 S. Ct. 208, 121 L. Ed. 2d 148 (1992)))(emphasis in original).

Plaintiffs' hybrid § 301 claims are without merit.  Defendants' Motions for Summary Judgment are due to be granted and Plaintiffs' claims are due to be dismissed.

## IV.   CONCLUSION

For the reasons set forth above, the Court finds that Plaintiffs' Motion for Default Judgment (Doc. 27) is due to be denied.  Plaintiffs' Motion to Strike the Affidavit of James Sisson (Doc. 27) is due to be granted in part and denied in part.  Paragraph 9 and Exhibit D of Sisson's affidavit are due to be stricken.

Defendants' Motions for Summary Judgment (Doc. 21 & 24), as to all claims of the Plaintiffs, are due to be granted.  The Court finds no existing material issue of triable fact

as to the claims nullified by the grant of summary judgment in favor of Defendants.

The Court will enter an Order contemporaneously herewith in accordance with this

Memorandum Opinion granting summary judgment in favor of Defendants on all claims of

Plaintiffs.

DONE this _20th_ day of April, 2000.

_____
H. DEAN BUTTRAM, JR.
UNITED STATES DISTRICT JUDGE